IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EDWIN VELÁZQUEZ RIVERA, et al.  *  <br>       Plaintiffs                                *  <br>                                                      * | |
| v.                                                  *  <br>                                                      * | Civil No. 07-1673(SEC) |
| PEDRO DÁVILA TOLEDO, et al.       *  <br>       Defendants                           *  <br>                                                      * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OPINION AND ORDER**

Pending before the Court is Defendants' Motion to Dismiss (Docket #17), and Plaintiffs' Opposition thereto (Docket # 21). After reviewing the filings and the applicable law, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part.**

**Standard of Review**

*Fed. R. Civ. P. 12(b)(6)*

To survive a Rule 12(b)(6) motion, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, the Court must accept as true all of their "well-pleaded facts [and indulge] all reasonable inferences therefrom." Id. However, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Id. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008). Therefore, "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either

**Civil Case No. 07-1673 (SEC)**                                                                 2

direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). The Court "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306.

**Factual and Procedural Background**

Plaintiffs' claims are under Title 42 U.S.C.A. §1981, and §1983, and several state laws. They seek relief for the damages suffered by Edwin Velázquez Rivera (hereinafter Velázquez or Plaintiff) as a result of the excessive force employed by Juan Corchado Vargas (hereinafter Corchado) during Velázquez's interrogation. Velázquez's co-plaintiffs are his wife, Daisy Pérez Vélez (hereinafter Daisy), and their sons, Edwin Rafael Velázquez Pérez (hereinafter Rafael), Enedwin Omar Velázquez Pérez (hereinafter Omar), and Abigail Velázquez Pérez (hereinafter Abigail) who seek relief for their emotional damages. Plaintiffs brought this action against: (1)Corchado, the alleged aggressor and sergeant officer of the Criminal Investigation Bureau (hereinafter CIC) of Aguadilla; (2)Juan Acevedo (hereinafter Acevedo); (3)Luis Arce (hereinafter Arce); (4)Sabrina Dilliagionardo (hereinafter Sabrina);[1] (5)Manuel Portalatín Mercado (hereinafter Portalatín), the agressor's supervisor; (6)Pedro Dávila Toledo (hereinafter Toledo), the Puerto Rico Police Department Superintendent; and several unnamed defendants who participated in Velázquez's detention.

---

[1] Acevedo, Arce, and Sabrina where the police officers who observed Velázquez's aggression.

Plaintiffs allege that Acevedo, Arce, and Sabrina are liable for their damages because they were present at Velázquez's interrogation where Corchado used excessive force against Velázquez, and did nothing to stop him. Plaintiffs sued Portalatín because he was in charge of supervising Corchado, and Toledo because he failed to create adequate training and supervising policies to prevent these events.

The appearing co-defendants, Toledo, Portalatín, Acevedo, Arce, and Sabrina move to dismiss the complaint as to them on the following grounds: Acevedo, Arce, and Sabrina contend that they are entitled to qualified immunity, and that co-plaintiffs lack of standing; Toledo and Portalatín also argues that there is no *respondeat superior* liability under section 1983. We recite the facts as alleged in the Complaint, and draw all reasonable inferences on Plaintiffs' behalf.

A complaint was filed with the Police of Puerto Rico against Velázquez for unlawful appropriation of monies, and Acevedo was assigned to it. On October 29, 2006, at approximately 1:30 p.m., Acevedo, Corchado and Arce went to Velázquez's parents' house in Isabela looking for him. Velázquez's parents, wife, brother, and sons were at the house. Corchado insulted Velázquez in his absence, telling his minor children that their father was a criminal and a swindler, he also acted aggressively in front of his family and kids. Subsequently, at approximately 2:30 p.m., Corchado returned to Velázquez's parents' house and found him. Then, Velázquez went voluntarily to Isabela's Police Station, and was taken into a small room. Once in the room, Acevedo gave Velázquez a paper containing the Miranda warnings, which he read and signed. Velázquez requested a lawyer to Avecedo,

and the latter left the room. Afterwards, Acevedo entered the room with Corchado, Arce and Sabrina, two other complainants and a minor. Once inside the room, Corchado started hitting Plaintiff's neck with his hand while insulting him and shouting that he was a criminal. Velázquez was very nervous because of all the screaming when Corchado suddenly struck his face with a powerful punch causing a scandal. Acevedo, Arce, and Sabrina observed the physical aggression, smiled and did nothing to stop Corchado.

At his point, there was turmoil; the other complainants present screamed and attempted to stop the physical and verbal aggression against Velázquez. After the incident, Velázquez was released and given another appointment related to the complaint against him. Wilson Sánchez, a policeman in the station, denied Velázquez's petition to file a complaint against Corchado for the physical aggression. After the incident, Velázquez went to the Good Samaritan Hospital's Emergency Room in Aguadilla to take care of the face trauma caused by Corchado.

**Applicable Law and Analysis**

*Co-Plaintiffs' lack of standing*

Toledo, Portalatín, Acevedo, Arce and Sabrina moved to dismiss the claims raised by Daisy, Rafael, Omar, and Abigail arguing that they lack standing to sue under 42 U.S.C.A. §1983. As Toledo, Portalatín, Acevedo, Arce and Sabrina correctly note, Plaintiffs other than Velázquez have no viable claim under section 1983 as they do not claim that their own constitutional rights were violated, but only that they have suffered damages for the violation

**Civil Case No. 07-1673 (SEC)**                                                                 5

of Velázquez's constitutional rights. Although we understand that Co-Plaintiffs Daisy, and Velázquez's sons, Rafael, Omar, and Abigail may have suffered significant mental anguish as a result of Velázquez's injuries, these damages were not caused by a deprivation of their own constitutional rights, but of Velázquez's. See, Soto v. Flores, 103 F. 3d 1056, 1062(1st Cir. 1997)(stating that although plaintiff suffered mental anguish as a result of her son's death, which was caused by defendants' violation of the deceased's constitutional rights, "[t]he question is not one of a degree of suffering, but whether the plaintiff can establish a violation of a federal right[; w]hile [plaintiff's] loss was of enormous, heartbreaking magnitude, the Constitution does not protect against all harms. She herself was not deprived of a constitutionally protected interest, and she may not bring a section 1983 due process claim..."). As such, Co-Plaintiffs Daisy's, Rafael's, Omar's, and Abigail's section 1983 claims against Toledo, Portalatín, Acevedo, Arce and Sabrina are hereby **DISMISSED with prejudice.**

*Toledo, Puerto Rico Police Department Superintendent*

Plaintiff brought Toledo as a co-defendant in this case, alleging that

> as the Superintendent of the Police of Puerto Rico, [he] is responsible for conducting investigations, arrests, interrogation to detainees and use of force[; and] as the maximum authority in the Police Department, [he] is the person ultimately responsible for adopting and implementing all the personnel regulations for hiring, training, performance evaluation, violations, disciplinary procedures, reprimand, and firing of all the police workforce, including the avoidance of violent acts in the performance of their duties...

See, Docket #1, ¶23.  Toledo moved to dismiss the claims against him on the grounds that:

(1) there is no supervisory liability pursuant to section 1983; (2) he is entitled to qualified immunity; and (3) pendent state law claims must be dismissed.

In order for a plaintiff to have a viable claim under section 1983, he must show that: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived the plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the United States." West Street Group LLC v. Epro, 2008 WL 2698669 at p. 4 (1st Cir. 2008)(unpublished); Whitfield v. Meléndez-Rivera, 431 F.3d 1, 177 (1st Cir. 2005); Cepero-Rivera v. Fagundo, 414 F. 3d. 124, 129 (1st Cir. 2005); Gutiérrez v. Cartagena, 882 F. 2d 553, 559 (1st Cir. 1989). The second prong of the inquiry is two-folded: (1) there must be an actual deprivation of a federally protected right, and (2) the conduct complained of must have been causally connected to the deprivation. Id. The first element (acting under color of state law) has not been disputed by Toledo, and it is apparent from the complaint that all the appearing defendants were acting under color of state law. It is the second element, personnel liability, which he disputes.

The First Circuit has stated that a superior officer, such as Toledo, "cannot be held vicariously liable under [section 1983] on a *respondeat superior* theory." Maldonado v. Castillo, 23 F. 3d 576, 581(1st Cir. 1994)(hereinafter Castillo). For a supervisor to be liable under section 1983, a plaintiff must prove that: "(1) the supervisor's acts or omissions have deprived the plaintiff of protected rights; (2) the supervisor's action or inaction amounted to callous indifference or gross negligence with regard to the constitutional rights of others; and (3) the supervisor's action or inaction is affirmatively linked to the actual misconduct."

**Civil Case No. 07-1673 (SEC)**                                                                                              7

Hernández-Payero v. Puerto Rico, 493 F. Supp.2d 215, 226 (1st Cir. 2005); see also, Castillo, 23 F.3d at 581. In other words, there is an element of deliberate indifference and one of causation. The "causation requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights... if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct." Id. The necessary nexus may be found also if "there exists a widespread abuse sufficient to alert a supervisor to ongoing violations[, to the extent that] the supervisory is on notice and fails to take corrective action, say, by better training or closer oversight." Id. Furthermore, "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Id.

Finally, in order to find that a supervisor showed deliberate indifference, there must be an allegation of: "(1) a grave risk of harm, (2) the supervisor's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." Robles v. Hoyos, 151 F. 3d 1, 7(1st Cir. 1998). It is "required that the supervisor had 'overtly or tacitly approved of, or purposely disregarded the conduct." Rodríguez Vázquez v. Cintrón, 160 F. Supp. 2d 204, 211(D.P.R. 2001)(hereinafter Rodríguez), citing, Lipsett v. University of Puerto Rico, 864 F. 2d 881, 902-903 (1st Cir. 1988). In this regard, "an important factor in determining whether a supervisor is liable to the extent he has encouraged, condoned ... or been deliberately indifferent to the behavior of a subordinate, is whether the official was put on notice of the behavior which was likely to result in the violation of the constitutional rights of citizens." Rodríguez, 160 F. Supp. 2d at 211.

**Civil Case No. 07-1673 (SEC)**                                                                 8

Plaintiff's complaint lacks specificity as to Toledo's participation in the violation of Velázquez's constitutional right to be free from police brutality. Furthermore, Velázquez's complaint is completely devoid of allegations from which the Court can infer that Toledo was on notice of the officers' illegal conduct, that this conduct created a grave risk of harm for citizens, and that, even then, Toledo failed to take measures to address the risk. The only allegations made against Toledo are conclusive in nature, *i.e.*, that he failed to create a policy for interrogation that was consistent with the constitutional rights of Plaintiff, and/or that he failed to train the officers, and/or that he failed to supervise them to ensure compliance with the policy. We conclude, as we have in similar cases, that Velázquez's "factual allegations are poor and insufficient to establish all the elements of his claim against Toledo." Rodríguez, 160 F. Supp. 2d at 212. The lack of specific allegations that link Toledo to the officers' malfeasance impedes us to conclude that his conduct showed deliberate indifference for Velázquez's constitutional rights as it is required to hold Toledo liable under section 1983. In light of the above, Velázquez's section 1983 claims against Toledo are hereby **DISMISSED with prejudice.**

*Manuel Portalatín, Director of the CIC of Aguadilla*

Plaintiff also avers that Corchado's supervisor, Portalatín, is liable under section 1983. Portalatín argues that there can be no supervisory liability as to him, and that he is entitled to qualified immunity. To the contrary, Velázquez argues that Portalatín was in charge of training and supervising the defendants and implementing the applicable regulations. See, Docket #1, ¶9. As previously discussed, a supervisor cannot be held liable under a

**Civil Case No. 07-1673 (SEC)**                                                                                                                                9

*respondeat superior* theory; however, liability may attach if the supervisor incurred in deliberate indifference regarding its subordinate's unconstitutional conduct. Plaintiff must also establish the necessary nexus between a deliberate indifference from Portalatín and the constitutional violation. This nexus can be established if "the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct." Castillo, 23 F. 3d at 582. Id. A "causal link may also be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." Id. Plaintiff alleged that Portalatín knew of defendants' illegal conduct. Although he does not specify at which point Portalatín learned of this conduct, the fact that he alleged that Portalatín "did nothing to stop it" can be reasonably inferred to mean that he was present during the beating at the station, and failed to take corrective action. As such, Velázquez has pled enough to present a plausible entitlement to relief against Portalatín on supervisory liability grounds.

"The doctrine of qualified immunity provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Whitfield v. Melendez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005); see also, Anderson v. Creighton, 483 U.S. 635, 638 (1987). Whether a defendant is entitled to qualified immunity requires application of a three-part test: "(1) whether the plaintiff has alleged a constitutional violation; (2) whether the law clearly established that defendants' action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right." Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004)(hereinafter Pierluisi). It

**Civil Case No. 07-1673 (SEC)**                                                                 10

is undisputed that "[t]he right to due process law (and, by extension, to be free from police brutality) is... clearly established under the Fourteenth Amendment." (Id., at 6), as such, prong one is met. In this case, because Acevedo, Arce, and Sabrina were not the officer who assaulted Velázquez, to solve the *clearly established right* prong, we must also determine whether it was clearly established that an officer present at the time of the assault could be held liable for the constitutional violations perpetrated by his fellow officers. Id.

For the reasons stated above, we cannot conclude, at this point, that Portalatín is entitled to qualified immunity. First, as we already stated, the right to be free from police brutality is a constitutional right clearly established by law. It is also clearly established that a supervisor may be held liable for his subordinate's unconstitutional conduct if his own actions or omissions show a deliberate indifference "to conduct that is itself violative of a plaintiff's constitutional rights." Id. This is also true even if the supervisor lacks actual knowledge of the censurable conduct, if he "would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it" but did not. Id. On the other hand, it remains to be seen whether Portalatín's omissions were objectively reasonable. However, the record does not allow for such a determination at this point. We are not saying that Portalatín is precluded from raising this defense later on; however, at this stage the Court is unable to conclude that he is entitled to qualified immunity. Taking Plaintiff's allegations as true, as we must when ruling on a motion to dismiss, we conclude that they have pled a plausible entitlement to relief under section 1983 against Portalatín. As such, Portalatín's motion to dismiss is hereby **DENIED.**

**Civil Case No. 07-1673(SEC)** 11
  *Acevedo, Arce, and Sabrina allegations*

Velázquez argues that Acevedo, Arce, and Sabrina are liable under section 1983 because even though they did not take affirmative action during the Velázquez's beating they did nothing to stop this conduct. In response, Acevedo, Arce, and Sabrina stated that they are entitled to qualified immunity.

The First Circuit stated that there is a potential basis of liability under section 1983 to: "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force." Gaudreault v. Municipality of Salem, 923 F. 2d 203, 207 (1st Cir. 1990); see also, Hathaway v. Stone, 687 F. Supp. 708, 712 (D. Mass. 1988)("assuming Officer Stone was using unconstitutionally excessive force, Officers Baird and Reed may be held liable if they were present when the plaintiff was beaten, they knew that such force was being used, and they failed to stop Officer Stone from using such force."); Calvi v. Knox County, 470 F. 3d 422, 428 (1st Cir. 2006)("a bystander officer who has a realistic opportunity to prevent the use of excessive force by a fellow officer may in certain circumstances be held liable for failure to intervene."); Davis v. Rennie, 264 F. 3d 86, 98 (1st Cir. 2001)("police officers have a duty to intervene when they see another officer use excessive force against a pretrial detainee."). These cases show that Plaintiffs' allegations set forth a plausible entitlement to relief against Acevedo, Arce, and Sabrina since they plead that they were present at the time of the beating and still did nothing to stop the aggression. Therefore, it is impossible at this stage of the proceedings, where all the Court has before it is the initial pleadings and the pending motions to dismiss, to conclude that their conduct

**Civil Case No. 07-1673(SEC)**                                                                                          12

satisfies the test of objective reasonableness required by the qualified immunity doctrine.[2]

There is nothing of evidentiary value in the record to put Velázquez's interrogation into perspective and which would allow the Court to make a determination regarding the reasonableness of Corchado's use of excessive force. As such, Acevedo, Arce, and Sabrina's motion to dismiss is hereby **DENIED.**

   **Conclusion**

   In light of the above discussion, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. Velázquez's federal claims against Toledo are **DISMISSED with prejudice**. Partial judgment will be entered accordingly.

   **SO ORDERED.**

   In San Juan, Puerto Rico, this 28th day of July, 2008.

                                                                 *S/ Salvador E. Casellas*
                                                                 SALVADOR E. CASELLAS
                                                                 U.S. Senior District Judge

---

[2] The reasonableness use of excessive force during an interrogation "must be viewed from the perspective of the officers at the scene, the circumstances of the particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of other officers or others, and whether he is actively resisting arrest . . . " Dean v. City of Worcester, 924 F. 2d 364, 368 (1st Cir. 1991).